UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

JOHN PAUL MORGAN,

    Plaintiff,

              v.

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

    Defendant.
_____/

Civil Action No. 15-12544
Honorable Linda V. Parker
Magistrate Judge Elizabeth A. Stafford

### REPORT AND RECOMMENDATION
### ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 14, 16]

Plaintiff John Paul Morgan appeals a final decision of defendant Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). Both parties filed motions for summary judgment, which were referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record and a hearing on June 29, 2016, the Court finds that the administrative law judge's ("ALJ") decision is not supported by substantial evidence, and thus **RECOMMENDS**:

- **GRANTING** Morgan's motion [R. 14];

- **DENYING** the Commissioner's motion [R. 16]; and

- **REMANDING** the Commissioner's decision for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. Morgan's Background and Disability Application

Morgan was 41 years old when he submitted his application for DIB in September 2013, alleging a disability onset date of August 19, 2013. [R. 10-6, Tr. 152-53]. He last worked as a mechanic in 2013. [R. 10-2, Tr. 36]. Morgan claims to be disabled due to herniated discs at L4-L5 and L5-S1, degenerative disc disease, pain from his back to his legs, Graves' disease, muscle spasms, depression, anxiety, and insomnia. [R. 10-2, Tr. 42; 10-6, Tr. 142, 152]. After a hearing, the ALJ determined that Morgan was not disabled. [R. 10-2, Tr. 13]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [R. 10-2, Tr. 1-3]. Morgan timely filed for judicial review. [R. 1].

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Morgan was not disabled. At the first step, she found that Morgan had not engaged in

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c).

3

substantial gainful activity since his alleged onset date. [R. 10-2, Tr. 15]. At the second step, she found that Morgan had the severe impairments of degenerative disc disease and "mood disorder (depression/anxiety)." [*Id.*]. Next, the ALJ concluded that none of Morgan's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, Tr. 15-16].

Between the third and fourth steps, the ALJ found that Morgan had the RFC to perform "sedentary work"[2] with the following additional limitations:

> [T]he opportunity to alternate from sitting to standing, and from standing to sitting, for up to five minutes approximately every 20 minutes; no twisting movements of the trunk; no climbing of ladders, ropes or scaffolds; no crawling; occasional climbing of stairs, balancing, stooping, kneeling, and crouching; no exposure to hazards; no use of left foot or leg controls; and simple, routine, repetitive work not done at production rate pace (e.g., no assembly-line work), with minimal changes in the work setting.

[R. 10-2, Tr. 17]. At step four, the ALJ found that Morgan could not perform past relevant work. [*Id.*, Tr. 24]. With the assistance of VE testimony, the ALJ determined at step five that based on Morgan's age, education, work

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." § 404.1567(b).

4

experience and RFC, he could perform the positions of inspector, packager, and order checker, for which significant jobs existed in the economy. [*Id.*, Tr. 23].

## II. ANALYSIS

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d at 723. *See also Rogers*,

486 F.3d at 249. In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

    The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless. *Id.*; *Gentry*, 741 F.3d at 723, 729; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011).

    Morgan argued in his brief that the Court should remand the decision for further administrative proceedings because the ALJ failed to properly evaluate whether his impairments met or equaled Listing 1.04A; improperly rejected the opinions of his treating physician and psychiatrist; failed to account for Morgan's need for an ambulatory assistive device; and failed to include Morgan's credible social limitations in the mental RFC. However,

during the hearing, Morgan waived his listing and mental impairment arguments.

Because the ALJ improperly interpreted objective medical evidence when giving limited weight to Morgan's treating physician and assessing Morgan's RFC, the Court recommends remand.

**A.**

The ALJ and the Commissioner both summarized Morgan medical history as including objective evidence of his physical impairments. [R. 10-2, Tr. 18-20; R. 16, PgID 594-99]. That evidence includes a 2009[3] MRI that revealed spondylotic changes in the lower lumbar spine, an annular tear and disc bulge at L4-L5, mild to moderate central canal stenosis, "bilateral neural foraminal narrowing with mild impingement of the exiting left L4 nerve root," and mild disc loss at L5-S1. [R. 10-7, Tr. 356-58]. A second MRI in 2013 showed dissociation at L4-L5 and L5-S1, moderate to severe narrowing of disc space at L5-S1, an annular tear with broad-based central disc bulge at L4-L5, and moderate spinal canal stenosis. [*Id.*, Tr. 285-86]. Physical examinations in 2013 and 2014 revealed abnormal gait (including stooping and limping with a cane), muscle spasms along the spine,

---

[3] The Commissioner argues that this MRI is too old to be relevant to Morgan's limitations during the relevant period, but the Court views that as a medical judgment.

decreased range of motion and a kyphotic curve of the spine, a positive straight leg raising test (with a positive Lasegue's sign) and one that caused pain down the left lower extremity, tenderness and sciatica at L5-S1. [R. 10-7, Tr. 263, 271, 279, 323, 327, 330, 365, 369, 373, 435, 443, 447, 455, 459, 490]. The Commissioner correctly notes that the physical examinations included normal findings as well. [R. 16, PgID 594-99, citing R. 10-7, Tr. 263, 267, 271, 347, 365, 369, 373, 427, 431, 435, 439, 443, 463, 490]. To alleviate his back pain, Morgan was prescribed Lortab (hydrocodone and acetaminophen) and Valium. [*See, e.g.*, R. 10-7, Tr. 298, 323, 478].

David Schwarz, M.D., was Morgan's treating physician during the relevant period, and he performed most of the above-described examinations, ordered testing and evaluation by other providers, and was otherwise privy to the objective medical evidence. [R. 10-7, Tr. 261-76, 281-305, 312, 316, 327, 330, 365-74, 378-83, 425-79, 487-90]. In October 2013, Dr. Schwarz rendered a "Physical Capacities Evaluation" that described Morgan's prognosis as poor; indicated that Morgan experienced pain, spasm and decreased range of motion; found that Morgan frequently had back pain severe enough to interfere with performing simple, work-related tasks; and opined that Morgan's pain medication caused fatigue

8

and mental confusion. [*Id.*, Tr. 281]. Dr. Schwarz estimated that Morgan could sit for four hours, stand and walk for two hours out of an eight hour work day, and push and pull only about ten percent of the day. [*Id.*, Tr. 281-82]. He wrote that Morgan would require changes of position about every ten minutes, and frequent breaks that affected his "ability to be gainfully employed." [*Id.*, Tr. 281, 283].

Dr. Schwarz issued a "Medical Source Statement" in March 2014. [*Id.*, Tr. 378-81]. This updated opinion indicated that Morgan's symptoms would constantly be severe enough to interfere with work tasks; that he could sit, stand and walk for only one hour per day, and not push or pull at all; and that he required the ability to change positions at all times. [*Id.*, Tr. 378-81]. Dr. Schwarz reiterated that Morgan's use of Valium and hydrocodone caused fatigue, and altered mentation and coordination. [*Id.,* Tr. 378]. In all other respects, Dr. Schwarz's second opinion was the same as his first.

In December 2014, Dr. Schwarz completed a "Medical Opinion Re: Ability to Do Work-Related Activities (Physical)," which reiterated most of the limitations set forth in his last opinion, but added a need for assistive device for ambulation and an indication that Morgan was impaired with respect to his gross manipulation. [R. 10-7, Tr. 382-83]. Dr. Schwarz

9

further stated that Morgan would need to lie down at unpredictable intervals two to four times during an eight hour working shift. [*Id.*].

Dr. Schwarz's opinions are the only ones provided by a medical source in the record. As the ALJ acknowledged, "there is no opinion from a State agency medical consultant." [R. 10-2, Tr. 22].

**B.**

While not assigning Dr. Schwarz's opinions regarding Morgan's limitations any particular weight, the ALJ concluded that those opinions "are not consistent with the clinical findings" in the record, including Dr. Schwarz's treatment notes and the MRI results. [*Id.,* Tr. 24]. The ALJ concluded that "allegations of disabling symptoms are not fully substantiated by objective medical evidence" and that "the diagnostic test results and clinical findings are consistent with a physical residual function capacity for sedentary work . . . ." [*Id.*, Tr. 21, 24]. In other words, the ALJ explicitly interpreted raw medical data in order to discount Dr. Schwarz's opinions and assess Morgan's RFC. This was error.

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent

with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. An ALJ who gives less than controlling weight to a treating physician's opinion must provide "good reasons" for doing so in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry,* 741 F.3d at 723. In all cases, a treating physician's opinion is entitled to great deference. *Id.*

Here, the ALJ did not make clear the weight that she gave Dr. Schwarz's opinions, but it is clear that she did not give them great deference. More importantly, an ALJ's independent assessment of the medical evidence never constitutes a good reason for discounting the opinion of a treating physician.

It is well established that an ALJ may not "substitute [her] own medical judgment for that of the treating physician where the opinion of the

11

treating physician is supported by the medical evidence." *Meece v. Barnhart*, 192 Fed. Appx. 456, 465 (6th Cir. 2006). "While an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute [her] own lay 'medical' opinion for that of a treating or examining doctor." *Smiley v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 592, 600 (S.D. Ohio 2013) (citation, internal quotation marks and brackets omitted).

The caution that "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings," *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009), applies equally when an ALJ is assessing a claimant's RFC. (Citation and internal quotation marks omitted). "[C]ourts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data." *Allen v. Comm'r of Soc. Sec.*, No. 12–15097, 2013 WL 5676254 at *15 (E.D. Mich. Sept. 13, 2013) *adopted by* 2013 WL 5676251 (E.D. Mich. Oct. 18, 2013) (collecting cases).

In *Allen*, as in this case, no consulting physician had assessed the claimant's RFC and the ALJ did not adopt the only medical opinion regarding the claimant's medical limitations, in violation of the treating

12

physician rule. *Id.* at \*14-15. The court noted that there may be circumstances in which the medical evidence is so clear that an ALJ can justify a RFC assessment without the benefit of a medical opinion, but not where the claimant had well-documented impairments.[4] *Id.* at \*16. "Under these circumstances, an expert medical advisor is necessary to properly evaluate plaintiff's impairments, symptoms and functional limitations." *Id. See also Zaft v. Comm'r of Soc. Sec.*, No. 12-13415, 2013 WL 5340772 (E.D. Mich. Sept. 23, 2013) (ALJ erred by interpreting raw medical data without the benefit of expert medical opinion, and relatedly declining to adopt RFC of treating physician without stating good reason).

The Commissioner argues that Dr. Schwarz's "statements" do not qualify as opinions to which the treating physician rule applies. [R. 16, PgID 610-11]. If true, that would mean that the ALJ rendered an RFC without the benefit of a single medical opinion despite the well-documented impairments in the record, and remand would still be appropriate pursuant to the above-described authority.

Further, the Court finds that Dr. Schwarz did render opinions that implicated the treating physician rule. Such medical opinions are defined

---

[4] *See, e.g., Rudd v. Comm'r of Soc. Sec.*, 531 Fed. Appx. 719, 726-27 (6th Cir. 2013) (x-rays showed no abnormalities, and examinations showed no issues with claimant's gait or standing).

as "'statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions.'" *Simpson,* 344 Fed. Appx. at 194 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(a)(2) and *Bass v. McMahon*, 499 F.3d 506, 510 (6th Cir. 2007)). Dr. Schwarz's opinions easily met those criteria. [R. 10-7, Tr. 281-83; 378-83]. In *Simpson*, the treating physician completed a "'Residual Functional Capacity Questionnaire'" that described the plaintiff's limitations stemming from her severe impairments. *Simpson*, 344 Fed. Appx. at 185, 194. The court found that the ALJ violated the treating physician rule by, outside of his expertise, substituting his own opinion for that of the treating physician who had completed the questionnaire. *Id.* at 194. The same analysis applies here.

The Commissioner cites *Zelin v. Colvin*, No. 14-12845, 2015 WL 5317154, at *5 (E.D. Mich. Sept. 11, 2015), which held that the treating physician rule did not apply to assessments that consisted "only of the doctors responses to prompts corresponding to certain limitations, with no reference to medical information." The assessments in *Zelin* sound sparser than Dr. Schwarz's opinions, which describe diagnoses, symptoms and a

14

prognosis. [R. 10-7, Tr. 281-83; 378-83]. To the extent that *Zelin* can be read to indicate that Dr. Schwarz's opinions, supported by his treatment records and the objective medical data, do not qualify as opinions under the treating physician, its holding does not square with the Sixth Circuit's holding in *Simpson*, and *Simpson* should be followed.

### III. CONCLUSION

Because the ALJ substituted her medical judgment for that of the treating physician and interpreted raw medical data in order to assess Morgan's RFC, the Court **RECOMMENDS** that Morgan's motion for summary judgment [R. 14] be **GRANTED**, the Commissioner's motion for summary judgment [R. 16] be **DENIED**, and the Commissioner's decision be **REMANDED** for further proceedings consistent with this report and recommendation.

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: July 5, 2016

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

16

**CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 5, 2016.

                                                   s/Marlena Williams
                                                   MARLENA WILLIAMS
                                                   Case Manager